IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WENDELL WOODROW WILLIAMS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-06-3072 |
| | § | |
| NATHANIEL QUARTERMAN, DIRECTOR, | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, CORRECTIONAL | § | |
| INSTITUTIONS DIVISION, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM AND ORDER DENYING PETITIONER'S
§ 2254 APPLICATION FOR WRIT OF HABEAS CORPUS**

Pending in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2254 is Respondent's Answer (Document No. 12) to Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1). Having considered Respondent's Answer, in which Respondent maintains that no relief is available to Petitioner as a matter of law on any of his claims, Petitioner's Reply to that Answer (Document No. 23), the claims raised by Petitioner in his Federal Application for Writ of Habeas Corpus, the state court records, and the applicable law, the Court[1] ORDERS, for the reasons set forth below, that Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1) is DENIED, and this § 2254 proceeding is DISMISSED with prejudice.

---

[1] On March 6, 2007, pursuant to the parties' consent, this case was transferred by the District Judge to the undersigned Magistrate Judge for all further proceedings. *See* Document No. 17.

I.     **Introduction and Procedural History**

Petitioner Wendell Woodrow Williams ("Williams") is currently incarcerated in the Texas Department of Criminal Justice, Correctional Institutions Division, as a result of a felony conviction for sexual assault of a child. Williams was charged by Indictment with that offense on July 17, 2002, in the 178th District Court of Harris County, Texas, Cause No. 913678. On February 6, 2004, a jury found Williams guilty and sentenced him to twenty years incarceration.

Williams appealed. On December 21, 2004, Williams' conviction was affirmed by Texas' Fourteenth Court of Appeals in a published decision. *Williams v. State*, 154 S.W.3d 800 (Tex. App.–Houston [14th Dist.] 2004). The Texas Court of Criminal Appeals refused Williams' petition for discretionary review on June 29, 2005. Williams thereafter filed a state application for writ of habeas corpus. On July 19, 2006, the Texas Court of Criminal Appeals denied that application without written order on the findings of the state trial court without a hearing. *Ex parte Williams*, Application No. WR-65-182-01. This § 2254 proceeding, filed by Williams on or about September 22, 2006, followed.

Respondent has filed an Answer (Document No. 12) to Petitioner's claims, to which Williams has filed a Reply. This § 2254 proceeding is ripe for ruling.

II.    **Claims**

Williams sets forth four claims in his § 2254 application:

1.    that his trial counsel was ineffective and labored under a conflict of interest;

2.    that there was insufficient evidence to support his conviction;

    3.    that the jury was improperly and unconstitutionally selected and empaneled; and

    4.    that extraneous offense evidence was improperly admitted at the punishment stage of the trial.

Williams raised his ineffective assistance of counsel/conflict of interest claim in his direct appeal, in his petition for discretionary review and in his state application for writ of habeas corpus. Williams' other three claims were only raised by him in his state application for writ of habeas corpus.

Respondent maintains that no relief is available to Williams on his ineffectiveness/conflict of interest claim because the Texas courts' rejection of that claim was not contrary to or an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. As for the remaining three claims, Respondent maintains that such claims are procedurally barred from review.

## III.  Standard of Review

### A.  Merits Review under § 2254(d)

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim presented in a federal habeas corpus proceeding has already been adjudicated on the merits in a state proceeding, federal review is limited. 28 U.S.C. § 2254(d) provides:

> (d) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"[A] decision by a state court is 'contrary to' [the United States Supreme Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" *Price v. Vincent*, 538 U.S. 634, 123 S. Ct. 1848, 1853 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)). A state court decision involves an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. But "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.'" *Price*, 123 S. Ct. at 1853 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25, 123 S. Ct. 357 (2002)).

As for factual issues, "the AEDPA precludes federal habeas relief unless the state court's decision on the merits was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' 28 U.S.C. § 2254(d)(2) (2000). In addition, the state court's factual determinations carry a presumption of correctness; to rebut them, the petitioner must present clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1) (2000)." *Smith v. Cockrell*, 311 F.3d 661, 667 (5th Cir. 2002), *cert. granted in part,* 124 S.Ct. 46 (2003).

Of utmost significance under § 2254(d) is the principle that once a federal constitutional claim has been adjudicated by a state court, a federal court cannot conduct an independent review of that claim in a federal habeas corpus proceeding. Rather, it is for the federal court only to determine whether the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, and whether the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative. In addition, the correctness of the state court's decision is not determinative. As instructed by the Supreme Court in *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003), "[i]n order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. . . . The state court's application must have been 'objectively unreasonable.'" (citations omitted).

**B.    Procedural Bar**

Federal courts are precluded from considering claims which were rejected by the last state court to have considered them on the basis of a state procedural default. *Coleman v. Thompson*, 501 U.S. 722, 730 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989). In order for a state court's rejection of a habeas claim to act as a procedural bar to review in a federal habeas proceeding, the state court must, in a plain statement, determine that its rejection of the claim rests on adequate and independent state procedural grounds. *Harris*, 489 U.S. at 261; *Michigan v. Long*, 463 U.S. 1032, 1042 (1983). Once a state court has relied on a procedural default for rejecting a habeas claim, a federal court in a federal habeas proceeding cannot review such a claim unless the petitioner shows

5

cause and prejudice associated with the default or shows that absent a review of the claim by a federal court a fundamental miscarriage of justice will result. *Coleman*, 501 U.S. at 750. A fundamental miscarriage of justice occurs when a "'constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Sawyer v. Whitley*, 945 F.2d 812, 816 (5th Cir.) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)), *cert. granted*, 502 U.S. 965 (1991), *and aff'd*, 505 U.S. 333 (1992).

### IV.     Discussion – Merits Review under § 2254(d)

In his first claim, Williams maintains that his trial counsel was ineffective, and labored under a conflict of interest, when it was announced by the State that a personal friend of Williams' attorney would be testifying against Williams at sentencing. According to Williams, given the personal relationship between his counsel and a State witness, his counsel did not, and could not, effectively represent him at sentencing.

This claim was raised by Williams in his direct appeal, in his petition for discretionary review, and in his state application for writ of habeas corpus. In rejecting the claim on direct appeal, Texas' Fourteenth Court of Appeals wrote:

> A jury convicted [Williams] of sexual assault of a child; he received a twenty-year sentence in the Texas Department of Criminal Justice, Institutional Division, and was assessed a $10,000.00 fine. On appeal, [Williams] first contends that the trial court erred by denying defense counsel's motion to withdraw because of a personal conflict and, second, that he received ineffective assistance of counsel when his attorney continued to represent him in the punishment phase of the trial. Because [Williams] has not shown his attorney had an actual conflict of interest and has not shown that anything she did prejudiced him, we affirm.
>
> ### I.     Factual and Procedural Background

[Williams] is the complainant's uncle. When the complainant's mother asked her to move out of the home, the 16-year old went to live with [Williams]. About six weeks after the complainant moved into [Williams'] home, he raped her. The complainant told her family what had happened and, with her aunt's assistance, helped the State press charges against [Williams]. [Williams] pleaded not guilty and the case proceeded to a jury trial.

### A.     [Williams'] Counsel's Motion to Withdraw

On the first day of trial, February 5, 2004, the prosecuting attorney informed the court of a newly-discovered witness who was expected to testify in the punishment phase of [Williams'] trial. When the prosecuting attorney announced the new witness's name, [Williams'] counsel objected to the admission of any extraneous offense evidence and pointed out that a Motion in Limine had been filed prior to the case. [Williams'] counsel made no further objections to calling the witness.

The following day, February 6, 2004, [Williams'] counsel made an oral motion to withdraw as [Williams'] counsel. [Williams'] counsel stated that the new punishment witness's testimony would "deeply affect me further representing [Williams] in this case . . . [and] I would like to recuse myself." In support thereof, [Williams'] counsel stated that, if she remained the attorney of record for [Williams], she would be required to cross-examine the witness. [Williams'] counsel informed the court that the witness was "a personal friend" and that she was certain that it would "affect [the] relationship." For those reasons, [Williams'] counsel told the court she could not continue to represent [Williams]. The trial judge denied the request to withdraw.

### B.     Punishment Phase Testimony

After the jury found [Williams] guilty, the punishment phase of his trial began. The State called the newly-found witness as its only punishment witness. The witness testified that [Williams] was her uncle and that he had also raped her, over twenty years ago, when she was fifteen years old. Like the complainant, with the assistance of her family, the witness spoke with police and helped the District Attorney's office file charges against [Williams]. The case was reduced to a misdemeanor (assault) and [Williams] received probation. The State introduced the judgment for this offense during the punishment phase of [Williams'] trial.

During the witness's direct examination, [Williams'] counsel objected twice. Following the witness's testimony on direct examination, and despite her previously stated objection, Williams' counsel cross-examined the witness. [Williams'] counsel's cross-examination focused on the fact that, despite the witness's allegations, "it was never proven that [Williams] actually molested [her]." [Williams'] counsel stressed

that the judgment the State introduced was for assault and not for sexual assault or rape. Finally, [Williams'] counsel suggested the possibility that Ms. Sanders had lied about Williams raping her because she was "pregnant and [ ] had to blame it on someone."

[Williams] then testified on his own behalf. [Williams'] counsel verified [Williams] had heard the witness's testimony and then asked if [Williams] had sexual intercourse with her. [Williams] responded that he had consensual intercourse with her during the course of a relationship that lasted for seven to eight months. [Williams] went on to state, in response to his counsel's questioning, that he was never convicted of rape because, he believed. the witness was already pregnant by another man at the time of the alleged rape. No other defense witnesses were called during the punishment phase.

The State recalled the witness, and [Williams'] counsel again objected during her direct examination and cross-examined her. At the conclusion of the punishment phase, the jury gave [Williams] a twenty-year sentence and assessed a substantial fine.

## II.     The Trial Court Properly Overruled the Motion to Withdraw

We review a trial court's decision to overrule an attorney's motion to withdraw for an abuse of discretion. *See Green v. State*, 840 S.W.2d 394, 407-08 (Tex. Crim. App. 1992) (en banc), *overruled on other grounds by Trevino v. State*, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999) (analyzing whether trial court erred by refusing trial counsel's motion to withdraw under an abuse of discretion standard). We will uphold the ruling if it is within the zone of reasonable disagreement or if the trial court acted in accordance with applicable guiding legal principles. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App.2000). We make this determination based upon what was before the trial court when it made its decision. *Montgomery v. State*, 810 S.W.2d 372, 380, 391 (Tex. Crim. App. 1990).

In her motion to withdraw, [Williams'] counsel asserted that she was such a close friend of the state's punishment witness that she did not feel able to continue adequately representing [Williams]. However, counsel clarified this allegation when the punishment phase of the trial was about to begin; counsel stated the witness was a "personal friend" but "not a close friend." And, although [Williams'] counsel was concerned that cross-examining the witness would affect *their* relationship, she did not articulate how that would bear upon her ability to continue to advocate zealously on [Williams'] behalf. In light of these facts, we cannot say the trial judge abused his discretion in denying counsel's motion to withdraw and we overrule [Williams'] first point of error.

## III.    [Williams] Did Not Receive Ineffective Assistance of Counsel

8

In his second point of error, [Williams] contends his counsel's irreconcilable personal conflict denied him the effective assistance of counsel that the Sixth Amendment guarantees to an accused in a criminal trial. We evaluate [Williams'] contention – that his counsel's personal conflict deprived him of effective assistance of counsel – under the familiar standards of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999) (en banc) (holding *Strickland* standard applies to ineffective assistance claims alleging a deficiency in attorney performance at noncapital sentencing proceedings); *see also Banda v. State*, 890 S.W.2d 42, 59 (Tex. Crim. App. 1994) (en banc) (applying *Strickland* standard to appellant's claim that his trial counsel was ineffective because of counsel's conflict of interest); *Thompson v. State*, 94 S.W.3d 11, 19 (Tex. App.– Houston [14th Dist.] 2002, pet. ref'd) (same).

We engage in a highly deferential review of defense counsel's representation at trial. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000) (en banc). *Strickland* requires an appellant alleging ineffective assistance of counsel to satisfy a two-pronged test. First, an appellant must show that counsel's representation or advice fell below objective standards of reasonableness. Second, an appellant must show the proceeding's result would have been different but for trial counsel's deficient performance. *Strickland*, 466 U.S. at 688-92, 104 S.Ct. 2052; *Thompson*, 94 S.W.3d at 15 (Tex. App.–Houston [14th Dist.] 2002, pet ref'd). When an attorney's representation is alleged to be deficient because of the attorney's conflict of interest, an appellant satisfies *Strickland's* first prong by showing that (1) "his counsel was burdened by an actual conflict of interest" and (2) "the conflict had an adverse effect on specific instances of counsel's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348-50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *Monreal v. State*, 947 S.W.2d 559, 564 (Tex. Crim. App. 1997) (en banc).

### A.   [Williams] Cannot Satisfy *Strickland's* First Prong

[Williams] relies upon his counsel's statements in her motion to withdraw to establish his counsel was burdened by an actual conflict of interest. And, to establish the adverse effect this conflict had on counsel's performance, [Williams] points to the brevity of his counsel's cross-examination of the witness. We reject these contentions for the reasons that follow.

#### 1.   *Actual conflict of interest*

First, an "actual conflict of interest" exists only if "counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests to the detriment of his client's interest." *Monreal*, 947 S.W.2d at 564. It is not sufficient for [Williams] to show a *possible* conflict of interest. *Pollan v. State*,

612 S.W.2d 594, 596 (Tex. Crim. App. 1981). While [Williams'] counsel indicated she felt her personal relationship with the State's witness would be affected, she never indicated whether, or how, her ability to advance [Williams'] interests would be affected. Highlighting the possibility that counsel was operating under a conflict of interest is insufficient to prove an actual conflict of interest. *See Thompson*, 94 S.W.3d at 21 (declining to find counsel was ineffective because "[a]t best, the record raises a concern of *possible* conflict of interest but not an *actual* conflict of interest"). [Williams] fails to demonstrate his counsel was forced to choose between advancing his interest in a fair trial and advancing other interests to his detriment.

> ### *2. Adverse effect on performance*

Second, even if [Williams] had demonstrated an actual conflict of interest, we cannot conclude, on this record, that the alleged conflict had an adverse effect on the cross-examination of the witness. "In order to determine whether appellant's attorney refrained from cross-examination in certain areas and whether her supposed inability to cross-examine more thoroughly could be considered detrimental to appellant, we must be able to discern from the record the nature of the information that could have been developed by counsel." *Id.* The record reveals that [Williams'] counsel objected repeatedly during direct and redirect examinations and twice cross-examined the witness. The cross-examinations tested the witness's credibility and offered other explanations to the jury. On this record, we cannot say her performance was deficient; nor does [Williams] identify "useful information" that could have been uncovered or utilized "through more effective cross-examination." *Id.* [Williams] fails to show "how or whether counsel was impaired in her representation of appellant." *See id.* at 22. We overrule [Williams'] second point of error because he has not satisfied *Strickland's* first prong.

Because the trial court acted within its discretion in overruling the motion to withdraw and because [Williams] has failed to show he received ineffective assistance of counsel, we affirm his conviction.

*Williams v. State*, 154 S.W.3d 800, 801-804 (Tex. App.–Houston [14th Dist.] 2004). Thereafter, in addressing the claim in Williams' state application for writ of habeas corpus, the Texas Court of Criminal Appeals determined that the claim had been fully and properly addressed on direct appeal, and additionally that Williams had failed to show that his counsel's performance was either deficient or that it resulted in any prejudice. *Ex parte Williams*, Application No. WR-65,182-01 at 39.

The Texas courts' determination that counsel did not labor under an actual conflict of interest is not contrary to or an unreasonable application of clearly established Federal law and is not based on unreasonable determinations of the facts in light of the evidence. Additionally, the Texas courts' determination that Williams had failed to prove that his counsel was ineffective is not contrary to or an unreasonable application of clearly established Federal law and is not based on unreasonable determinations of the facts in light of the evidence.

Criminal defendants are entitled, under the Sixth Amendment, to the assistance of counsel who is not "burdened by an actual conflict of interest," *Strickland v. Washington*, 466 U.S. 668, 692 (1984), and whose loyalties are not divided. *Hess v. Mazurkiewicz*, 135 F.3d 905, 910 (3rd Cir. 1998). An attorney labors under an "actual conflict" when he "actively represent[s] conflicting interests," *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980), when he "represents two clients whose interests in the outcome of a matter are different," *Perillo v. Johnson*, 79 F.3d 441, 447 (5th Cir. 1996), when the introduction of probative evidence or plausible arguments would significantly benefit one defendant to the detriment of another defendant who is represented by the same attorney, *United States v. Placente*, 81 F.3d 555, 558-59 (5th Cir. 1996), or when the attorney "places himself in a position conducive to divided loyalties." *Id.* at 558 (citing *United States v. Carpenter*, 769 F.2d 258, 263 (5th Cir. 1985)). At its most basic, however, an actual conflict is based on an attorney's representation of "inconsistent interests". *Smith v. White,* 815 F.2d 1401, 1405 (11th Cir.), *cert. denied*, 484 U.S. 863 (1987). Where a petitioner is able to demonstrate that his counsel labored under an actual conflict of interest, habeas relief is available if can also be shown that the conflict "adversely affected" his attorney's performance. *Cuyler*, 446 U.S. at 348.

When the alleged conflict of interest is not based on an attorney's alleged divided loyalties to different clients, but is instead based on a conflict between the attorney's own personal interests and the interests of his client, the alleged conflict and counsel's resultant performance are judged under the ineffectiveness standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See United States v. Newell*, 315 F.3d 510, 516 (5th Cir. 2002). Under *Strickland*, a petitioner must show that his counsel's performance was deficient and that he was prejudiced. *Strickland*, 466 U.S. at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687-689. The prejudice element requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Here, the record fully supports the Texas courts' determination that Williams' counsel was not laboring under an actual conflict of interest. The only interest of counsel's that could be said to have been adverse to Williams' was counsel's personal interest in a friendship she had with the State's witness. As such, the Texas courts correctly applied *Strickland* to counsel's performance. That application, and the Texas courts' resulting determinations that counsel's performance at sentencing was not deficient and that Williams suffered no prejudice, was not objectively unreasonable within the meaning of § 2254(d). Accordingly, under § 2254(d), no relief is available to Williams on his ineffective assistance of counsel/conflict of interest claim.

**V.      Discussion – Procedurally Barred Claims**

### A. Insufficient Evidence Claim

In his second claim, Williams contends that there was no evidence or insufficient evidence to support his conviction. According to Williams, the State's evidence was inconsistent, contradictory, and riddled with hearsay.

Williams raised this claim for the first time in his state application for writ of habeas corpus. The Texas Court of Criminal Appeals found the claim not cognizable. *Ex parte Williams*, Application No. WR-65,182-01 at 39 ("The applicant's challenges to the sufficiency of the evidence are not cognizable in post-conviction habeas proceedings. *Ex parte Christian*, 760, S.W.2d 659, 660 (Tex. Crim. App. 1988)."). This rejection of Williams' insufficient evidence claim constitutes a state law procedural bar to review of the claim.

It has long been the law in Texas that no evidence/insufficient evidence claims are not cognizable in a state application for writ of habeas corpus. More recently, however, it has become clear that the denial of a state application for writ of habeas corpus which contains a no evidence/insufficient evidence claim is to be construed as a determination by the Texas Court of Criminal Appeals that such sufficiency of the evidence claims are not cognizable in a state application for writ of habeas corpus. The Texas Court of Criminal Appeals made this clear in *Ex Parte Grigsby*, 137 S.W.3d 673 (Tex. Crim. App. 2004), when it wrote:

> . . . . In our writ jurisprudence, it is well-established that a challenge to the sufficiency of the evidence used to sustain a felony conviction is not cognizable on an application for a post-conviction writ of habeas. As such, Applicant's first ground for relief is denied. In denying Applicant's attack on the sufficiency of the evidence, we take this opportunity to clarify our disposition of habeas corpus applications where an applicant advances a challenge to the sufficiency of the evidence and we deny the application without written order. In *Ex Parte Torres*, addressing whether the applicant's subsequent petitions were barred under Article 11.07, Section 4, of the Texas Code Criminal Procedure, we determined that "a 'denial' signifies that we addressed and

rejected the merits of a particular claim while a 'dismissal' means that we declined to consider the claims for reasons unrelated to the claim's merits." However, we also held that "[a] disposition is related to the merits if it decides the merits *or makes a determination that the merits of the applicant's claims can never be decided."* A challenge to the sufficiency of the evidence presents one of those instances where we can never consider the merits of the applicant's claim. Therefore, today, we affirm our holding that where an applicant challenges the sufficiency of the evidence on an application for a writ of habeas corpus, and we subsequently dispose of the application by entering a denial without written order, the applicant's sufficiency claim was denied because the claim is not cognizable.

*Grigsby*, 137 S.W.3d at 674 (emphasis in original).

In this case, there was an explicit determination by the Texas Court of Criminal Appeals that Williams' sufficiency of the evidence claim was not cognizable. As such, the last state court to consider the claim has explicitly rejected it on state law procedural grounds. This Court, likewise, is procedurally barred from reviewing the claim. *See e.g. Digby v. Director*, 2006 WL 3761806 *6 (E.D. Tex. 2006); *Caldwell v. Dretke*, 2005 WL 1962599 (S.D. Tex. 2005); *Moore v. Dretke*, 2005 WL 1773615 (S.D. Tex. 2005); *Havens v. Dretke*, 2005 WL 1150169 (N.D. Tex. 2005).[2]

### B.   Jury Selection and Extraneous Offense Evidence Claims

In his third claim, Williams complains about the selection and empaneling of the jury. According to Williams, he could not exercise his peremptory challenges, the jury that was empaneled could not follow the law, and all African-Americans were excluded from the jury. In his fourth and final claim, Williams complains that the trial court improperly allowed evidence of extraneous offenses at the punishment stage, and then failed to provide the jury with a jury instruction on the consideration of extraneous offense evidence.

---

[2] There is no allegation or argument sufficient to establish the cause and prejudice necessary to overcome the procedural bar, and no showing that a miscarriage of justice will result if the claim is not considered on the merits.

These two claims were raised by Williams for the first time in his state application for writ of habeas corpus. The Texas Court of Criminal Appeals rejected both claims on state law procedural grounds:

> Because the applicant failed to raise on direct appeal his instant habeas claims challenging the jury selection process at trial and the trial court's admission of extraneous offense evidence, the applicant is procedurally barred from raising the claim in the instant proceeding. *Ex parte Townsend*, 137 S.W.3d 79, 81 (Tex. Crim. App. 2004).

*Ex parte Williams*, Application No. WR-65,182-01 at 39. Given that clear state law procedural ruling, as well as Williams' failure to establish the requisite cause and prejudice associated with his failure to properly raise his claims, or make a colorable showing that his is actually innocent, Williams' claims are procedurally barred from review in this § 2254 proceeding.

### VI.    Conclusion and Order

Based on the foregoing, and the conclusion Petitioner's claims have either been properly adjudicated on the merits by the state courts or that they are procedurally barred from review, the Court

ORDERS that Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1) is DENIED, and this § 2254 proceeding is DISMISSED WITH PREJUDICE. In addition, it is further

ORDERED that a Certificate of Appealability is DENIED. A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been

resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted). Where the claims have been dismissed on the merits, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484; *Beasley v. Johnson*, 242 F.3d 248, 263 (5th Cir.), *cert. denied*, 122 S.Ct. 329 (2001). When the claims have been dismissed on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Given the claims raised herein as well, as the rejection of Petitioner's claims by the Texas courts, the Court determines that reasonable jurists would not find the assessment of Petitioner's constitutional claims to be debatable or wrong and would not find debatable the correctness of the procedural rulings made herein. Therefore, Petitioner has not made a substantial showing of the denial of a constitutional right, and a Certificate of Appealability will not issue.

Signed at Houston, Texas, this 10th day of January, 2008.

Frances H. Stacy
United States Magistrate Judge